UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
THEADORE BLACK,                                             :
                                                            :
                Plaintiff,                :
                                                            :
          - against -                                   :
                                                            : **MEMORANDUM**
PAROLE OFFICER DOMINIQUE                                    : **DECISION AND ORDER**
PETITINATO, PO PETITINATO'S                                 :
PARTNER OF 9-29-2015, SENIOR PO                             :
LINDA JEFFERIES, NYS DIVISION OF                            : 16-cv-2320 (BMC) (RLM)
PAROLE, ALL PAROLE OFFICERS,                                :
POLICE OFFICER DAMICO, POLICE                               :
OFFICER SANTANA (SANTIAGO), LT.                             :
DOYLE, ALL OTHER POLICE OFFICERS,                           :
SHERMAN PAYAMI,                                             :
                                                            :
                Defendants.              :
------------------------------------------------------------ X

**COGAN**, District Judge.

    Parole Officer Dominique Pettinato,[1] Senior Parole Officer Linda Jefferies, Police Officer Noel D'Amico, and Police Lieutenant Michael Doyle moved for summary judgment on *pro se* plaintiff Theadore Black's claims of illegal search, false arrest, malicious prosecution, and conspiracy to violate constitutional rights arising out of a search of his home in 2015. As explained below, defendants' motions for summary judgment are granted.

## BACKGROUND

    The following facts are undisputed, unless otherwise noted. Plaintiff was released to parole supervision in July 2015 after serving four years' imprisonment for two counts of criminal possession of a weapon in the third degree. As a parolee, plaintiff was subject to certain general

---

[1] Although the complaint and some of this defendant's early filings use the spelling "Petitinato," the correct spelling is"Pettinato."

conditions, including that he permit his parole officer to visit him at his residence and to inspect his person, residence, and property, and that he was forbidden from owning or possessing a deadly weapon or "any dangerous knife." The apartment where the search at issue took place was plaintiff's approved parole residence. Parole Officer Pettinato visited this residence in July, August, and September 2015.

The search in question occurred on September 29, 2015, at approximately 9:45 p.m. New York State Parole Officer Pettinato and other parole officers, including Senior Parole Officer Denise Granum (who is not a party to this suit), went to plaintiff's apartment building, accompanied by members of the New York Police Department, including Lieutenant Michael Doyle and Officer Noel D'Amico.[2] The parole officers entered plaintiff's apartment and searched it. The parties disagree about the police officers' role in the search – plaintiff alleges that they also entered the apartment and assisted with the search, while defendants claim that they remained outside.

During the search, Parole Officer Pettinato discovered a backpack in a hallway closet located in a common area of the apartment. Along with the backpack, the closet contained several boxes with plaintiff's name written on them and men's shoe boxes. The backpack contained a metal knuckle knife, three other knives that appeared to Parole Officer Pettinato to be gravity knives, and four photographs, three of which depicted plaintiff and one of which depicted plaintiff's ex-girlfriend. The parole officers and plaintiff dispute whether plaintiff

---

[2] Plaintiff alleges that the NYPD defendants have refused to provide the names of all of the NYPD officers who were on the scene on the evening plaintiff's apartment was searched. Plaintiff raised the same complaint in a letter to the Court dated November 28, 2017. In response, the NYPD defendants filed a letter stating that they gave plaintiff the list of names on May 11, 2017, and reminded him of that letter again on October 27, 2017.

admitted that the backpack was his when the parole officers found it. However, in his 50-h testimony,[3] plaintiff admitted that the knives belonged to him.

Plaintiff was taken into custody and was eventually charged with seven violations of his conditions of parole, including possession of the knives. He was also charged in a criminal-court complaint with four counts of criminal possession of a weapon in the fourth degree.

Parole Officer Pettinato prepared the report to initiate parole-revocation proceedings; Senior Parole Officer Jefferies approved it.

Pettinato presented the case against plaintiff at a preliminary revocation hearing on October 13, 2015. After that hearing, the parole board concluded that there was probable cause to believe that plaintiff had violated his conditions of parole.

At the final revocation hearing, plaintiff pleaded guilty to one violation of his parole conditions – failure to report law-enforcement contact – in exchange for the District Attorney withdrawing all of the other charges in the parole warrant. Plaintiff was sentenced to 13 months' imprisonment for the violation, with credit for time served while his parole-revocation proceeding was pending. The criminal charges against plaintiff were eventually dismissed as facially insufficient pursuant to New York Criminal Procedure Law § 170.30(1)(a).

Plaintiff then brought this suit against parole officers Pettinato and Jefferies and police officers D'Amico and Doyle, alleging unlawful entry and search, false arrest, malicious prosecution, and conspiracy to violate constitutional rights.[4] Defendants moved for summary judgment on all claims.

---

[3] Under New York General Municipal Law §50-h, a plaintiff must participate in a hearing before he may bring claims against a municipality.

[4] Plaintiff also sued Police Officer Santana (Santiago), "PO Petitinato's partner of 9-29-2015" (who was later identified as Parole Officer Sherman Payami), and "All other Police Officers and Parole Officers that took part in the Search of this plaintiffs wifes home on 9-29-2015." Neither Sherman Payami nor Police Officer Santana (Santiago) were ever served. The claims against those defendants are hereby dismissed for failure to timely effect

## DISCUSSION

### I. Illegal-Search Claims

As an initial matter, plaintiff may only assert his own constitutional rights. A litigant generally does not have standing to assert the constitutional rights of others. Warth v. Seldin, 422 U.S. 490, 499 (1975). A "1983 civil rights action is a personal suit and may not be brought by a relative, even the parents, spouse or children of the individual whose civil rights were violated." Gray-Davis v. Rigby, No. 5:14-CV-1490, 2016 WL 1298131, at *7 (N.D.N.Y. Mar. 31, 2016), appeal dismissed (June 13, 2016) (quoting Barrett v. United States, 622 F. Supp. 574, 591 (S.D.N.Y. 1985)). To the extent plaintiff asserts constitutional claims on behalf of his wife or child, those are not actionable under 42 U.S.C. § 1983 and are dismissed.

As to plaintiff's illegal-search claims, defendant parole officers' primary argument is that their search of plaintiff's apartment did not violate the Fourth Amendment because it was rationally and reasonably related to their duties as parole officers, and therefore satisfied the standard articulated by the New York Court of Appeals in People v. Huntley, 43 N.Y.2d 175, 401 N.Y.S.2d 31 (1977). Defendant police officers echo this argument, and add that, even if they and searched entered plaintiff's home as plaintiff claims (which they dispute), their presence or assistance would not have rendered unlawful the parole officers' otherwise lawful search. All four defendants also argue that they are entitled to qualified immunity, because, after the Supreme Court's post-Huntley decision in Samson v. California, 547 U.S. 843 (2006), it is not clearly established that a New York parole officer must have reasonable suspicion to search a parolee's home.

---

service, as well as for the same reasons as the co-defendants who were served and who have defended this action. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.6 (2d Cir. 1990).

4

### A. Constitutionality of the Search under Huntley's "Rationally and Reasonably Related" Standard

Defendants argue that the search did not violate the Fourth Amendment because it was "rationally and reasonably related to the performance of the parole officer's duty," and therefore satisfied Huntley. See 43 N.Y.2d at 181, 401 N.Y.S.2d at 33. Defendant parole officers argue (and defendant police officers seem to assume) that Huntley's "rationally and reasonably related" test does not require any suspicion particularized to the parolee, but rather, only that the search be connected to the parole officer's duties generally.[5]

The Court disagrees with defendants' interpretation of what Huntley requires and with their application of Huntley to these facts. First, Huntley itself states that it is not enough for there to be a "rational connection" between the parole officer's duties and the search; rather, "the particular conduct must also have been substantially related to the performance of duty *in the particular circumstances*." 43 N.Y.2d at 181, 401 N.Y.S.2d at 34 (emphasis added). In Huntley, the parole officers had cause to search Huntley's residence because he had failed to report to his parole officer (as required) twice in a row. That is consistent with reasonable suspicion. Indeed, under the defendants' interpretation, there would be no need for the "rationally and reasonably related" test at all, because a search of a parolee's residence by a parole officer to ensure the parolee is not committing any crimes will always relate to the parole officer's duty to monitor him.

Furthermore, the Second Circuit has not interpreted Huntley so expansively, applying only in cases where the facts showed reasonable suspicicion. See, e.g., United States v. Newton,

---

[5] Defendant parole officers cite for this proposition United States v. Stuckey, No. 06 CR. 339, 2006 WL 2390268 (S.D.N.Y. Aug. 16, 2006), which concluded that "[w]hile suspicion clearly is sufficient to satisfy New York's 'reasonable relationship' requirement, it is not necessary."

5

369 F.3d 659, 666 (2d Cir. 2004) (explaining that Huntley was satisfied and the search of defendant's apartment was reasonable "once the parole officers in this case received information that [the parolee] had a gun at his residence and had threatened his mother and her husband."). The Second Circuit has previously noted that "the New York rule [described in Huntley] is coextensive with the requirements of the Fourth Amendment," United States v. Grimes, 225 F.3d 254, 259 n.4 (2d Cir. 2000), which, until the Supreme Court upheld California's suspicionless-search parole waiver provision in Samson in 2006, was assumed to require some particularized suspicion to search a parolee or his home. Defendants' interpretation of Huntley overlooks both this context and a key difference between the California and New York parole waiver statutes: clear and unambiguous waiver of suspicionless searches.

The California statute at issue in Samson required parolees to "agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and *with or without cause*." See Cal. Penal Code Ann. § 3067(a) (2000) (emphasis added). New York's parole waiver, on the other hand, requires every parolee to agree to "search and inspection of his person, residence and property," see 9 New York Codes, Rules and Regulations § 8003.2(d), but does not clearly and unambiguously require parolees to waive a *suspicionless* searches. The California parolee's acceptance of a "clear and unambiguous" suspicionless-search provision was an important part of the Samson Court's conclusion that the parolee did not have an expectation of privacy that society would recognize as legitimate. See id. at 852.

Neither the Supreme Court nor the Second Circuit has ever approved the search of parolee's residence absent reasonable suspicion or a clear and unambiguous waiver of suspicionless searches. Here, there was no such waiver, and the parole officers clearly lacked the

6

reasonable suspicion required by Huntley. The only basis for reasonable suspicion that they offer appears in the Pettinato affidavit, which states:

> I . . . conducted a total of five home visits in July, August and September 2015. It is important to visit a parolee's residence to see how he is adjusting to parole and to verify that he is actually living there. During these home visits, Plaintiff acted suspiciously. For example, on more than one occasion, Plaintiff was reluctant or initially refused to allow my partner and me inside of his residence during a home visit. In my experience, this was not typical behavior for a parolee. Plaintiff's furtive behavior led me to suspect that he could be in violation of his parole conditions.

This statement is entirely conclusory. Without testifying to precisely what plaintiff did that caused Parole Officer Pettinato to conclude that plaintiff "acted suspiciously" or was "reluctant" or "furtive" (and those are not the same things), she would not be allowed to testify to those conclusions at trial (and even if she were, she would be taken apart on cross-examination if she had nothing more to add to those conclusions).

The only arguably specific averment in this paragraph is that on one of the prior visits, plaintiff "initially refused to allow my partner and me inside." But it is undisputed that on that visit, plaintiff *did* ultimately let the officers inside, and they discovered no contraband, so that averment could not form the basis for reasonable suspicion. Indeed, the fact that Parole Officer Pettinato had recently made several visits to plaintiff's home prior to the one in question, and found no contraband, suggests the absence of a basis for reasonable suspicion, not its presence. Many people would be reluctant to permit strangers – even authorized parole officers – to enter their house at 5 or 6 a.m., especially if a partner and young child are asleep, as was the case here. It would not be reasonable to infer that such reluctance by itself was suspicious.

In addition, the conclusory averments in Parole Officer Pettinato's affidavit are not supported in her reports of previous visits. In one report, Pettinato noted that plaintiff was "very annoyed," but she never recorded anything in any of her reports about plaintiff acting

7

"suspiciously" or "furtive" or "reluctant," let alone any facts to support those conclusions. That these observations that Pettinato contends constituted reasonable suspicion appear for the first time in an affidavit supporting a summary-judgment motion underscores that there are factual issues about precisely what plaintiff did during the earlier visits and whether whatever it was amounted to reasonable suspicion for the later visit.

  *B. Qualified Immunity*

But the absence of reasonable suspicion does not necessarily resolve the illegal-search claim. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks and citation omitted). When state-official defendants, including state parole officers, move for summary judgment based on qualified immunity, the court must grant the motion unless it concludes that (1) the plaintiff has shown facts which "make out a violation of a constitutional right," and (2) that "the right at issue was clearly established at the time of defendant's alleged misconduct." Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Taravella, 599 F.3d at 133 (alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To determine whether a particular right was clearly established, courts in the Second Circuit consider: (1) whether the right in question was defined with "reasonable specificity"; (2) whether Supreme Court and

Second Circuit caselaw support the existence of the right in question; and (3) whether, under preexisting law, a reasonable state official would have understood that her acts were unlawful. Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007). When it is unclear whether the relevant circuit's decisions are consistent with Supreme Court authority, the right is not "clearly established" for qualified-immunity purposes. See Reichle v. Howards, 566 U.S. 658, 666-70 (2012).

The Court agrees with defendants that in light of Samson, the law in this area is sufficiently unclear that a reasonable parole officer in this situation would not have known that she needed reasonable suspicion for her search to be lawful. Since Samson, "[c]ourts disagree as to whether or not the relevant parole regulation in New York is similar to the California statute at issue in Samson, and thus there is no consensus on whether or not Samson applies to cases involving New York parolees." United States v. White, 622 F. Supp. 2d 34, 41 (S.D.N.Y. 2008) (collecting cases).

Non-precedential Second Circuit decisions since Samson have hinted in both directions. Some seem to suggest that New York's statute does not permit suspicionless searches. See, e.g., United States v. Quinones, 457 F. App'x 68, 70 (2d Cir. 2012) (applying Huntley and concluding that "a parole search that is so divorced from reasonable suspicion as to be arbitrary and capricious might not be considered "rationally and substantially related to the performance of [the parole officer's duty]."); United States v. Watts, 301 F. App'x 39, 42 (2d Cir. 2008) (noting that the New York statute does not explicitly authorize "anytime, anywhere" searches). Other decisions have assumed without deciding that New York law does require reasonable suspicion. See United States v. Justiniano, 401 F. App'x 595, 597 (2d Cir. 2010) (citing United States v. Massey, 461 F.3d 177, 179 (2d Cir. 2006)). But see Massey, 461 F.3d at 180 (Miner, J.,

concurring) (concluding that New York's waiver provision contains the same waiver as the California statute at issue in Samson); see also United States v. Chirino, 483 F.3d 141, 150 (2d Cir. 2007) (concurring opinion) (stating that propriety of suspicionless searches of probationers, who generally have greater expectations of privacy than parolees, is an open question in the Second Circuit after Samson).

This uncertainty in the caselaw means that a reasonable parole officer conducting the search at issue here without reasonable suspicion would not necessarily have understood her acts to be unlawful. See Higazy, 505 F.3d at 169. It is unclear whether the Second Circuit's decisions are consistent with the Supreme Court's decision in Samson, so the right is not "clearly established" for qualified-immunity purposes. Reichle, 566 U.S. at 658. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Coollick v. Hughes, 699 F.3d 211, 221 (2d Cir. 2012) (citation omitted). In light of Samson, whether reasonable suspicion is required for a New York parole officer to search a New York parolee's residence is a gray area. The parole officers are therefore entitled to qualified immunity.

The police officers are also entitled to qualified immunity as to plaintiff's illegal-search claims. Even assuming that the police officers entered plaintiff's apartment and participated in the search as plaintiff alleges, the Second Circuit has held that police assistance during an otherwise reasonable search by parole officers does not render the search unreasonable. See Newton, 369 F.3d at 662; United States v. Reyes, 283 F.3d 446, 464 (2d Cir. 2002) (concluding that the law permits a "coordinated effort" between federal probation officers and police officers to visit a defendant on supervised release and search the releasee's neighbor's house, respectively, "as long as the probation officers are pursuing legitimate probation-related objectives.").

A reasonable police officer in this situation would not have understood the parole officers' actions to be unlawful, and, under Second Circuit precedent, the police officers were entitled to assist with a lawful parole search. Defendants are entitled to qualified immunity, and therefore summary judgment, as to the illegal-search claims.

## II.    False-Arrest and Malicious-Prosecution Claims

Defendants are also entitled to summary judgment as to the false-arrest and malicious-prosecution claims. Probable cause to arrest is an absolute defense to both types of claims, whether they are brought under New York law or 42 U.S.C. § 1983. See Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (false arrest); Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003) (malicious prosecution). An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

It is undisputed that Parole Officer Pettinato discovered a metal knuckle knife and three gravity knives in a backpack in a common area of plaintiff's residence, along with pictures of plaintiff and his ex-girlfriend. It is also undisputed that plaintiff's possession of the knives would violate New York Penal Law § 265.01(1). These facts establish probable cause, or at least arguable probable cause, under a theory of constructive possession. "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object, and may be shown by direct or circumstantial evidence." United States v. Facen, 812 F.3d 280, 286-87 (2d Cir. 2016) (quoting United States v. Payton, 159 F.3d 49, 56 (2d Cir.1998)).

There was significant circumstantial evidence to support a conclusion that plaintiff had constructive possession over the knives: plaintiff lived in the house, the backpack containing the knives was found in a common area containing boxes labeled with plaintiff's name, and the officers found pictures of plaintiff and his ex-girlfriend in the backpack. Based on this circumstantial evidence, the officers likely had probable cause to arrest plaintiff for possessing the knives. See Jimenez v. City of N.Y., No. 15 CIV. 3257, 2016 WL 1092617, at *3 (E.D.N.Y. Mar. 21, 2016). But even if they lacked probable cause, the police officers would still be entitled to qualified immunity because they had at least arguable probable cause to arrest – it was objectively reasonable for them to believe that they had probable cause to arrest based on plaintiff's constructive possession of the knives. See Jackson v. Suffolk Cty., 87 F. Supp. 3d 386, 405-06 (E.D.N.Y. 2015).

Defendants are further entitled to summary judgment on plaintiff's claims for malicious criminal prosecution and malicious prosecution of a parole violation because neither proceeding concluded in his favor. To prevail on a malicious-prosecution claim, the plaintiff must prove: "(1) the initiation of a criminal proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." Savino, 331 F.3d at 72 (quoting Colon v. City of N.Y., 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983)).

The criminal charges against plaintiff for possession of a weapon were dismissed for facial insufficiency of the indictment pursuant to New York Criminal Procedure Law § 170.30(1)(a). The Second Circuit has stated that such a dismissal is not a "sufficiently favorable" adjudication of the merits "to be indicative of innocence," and therefore does not qualify as a favorable termination for a malicious-prosecution claim. Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) (citing MacFawn v. Kresler, 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 487

(1996)). Plaintiff cannot satisfy the lack-of-probable-cause or favorable-termination elements, and therefore defendant police officers are entitled to summary judgment on the claims for malicious criminal prosecution.

Plaintiff's claim for malicious prosecution of a parole violation fails for the same reason. Plaintiff pleaded guilty to his parole violation. A guilty plea, even if to fewer than all of the charges, is not a favorable termination, <u>Magnotta v. Putnam Cty. Sheriff</u>, No. 13 CIV. 2752, 2014 WL 705281, at *6 (S.D.N.Y. Feb. 24, 2014), so the parole-officer defendants are entitled to summary judgment as to that claim as well. Senior Parole Officer Jefferies is, in any event, entitled to absolute immunity for her role in initiating the parole-revocation proceedings, because that role is prosecutorial in nature. <u>See</u> <u>Victory v. Pataki</u>, 814 F.3d 47, 66 (2d Cir. 2016), <u>as amended</u> (Feb. 24, 2016).

### III.  Claims for Conspiracy to Violate Constitutional Rights

To survive a motion for summary judgment on a constitutional-conspiracy claim pursuant to 42 U.S.C. § 1983, plaintiff must produce facts that show (1) an agreement between two or more state actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. <u>Biswas v. City of New York</u>, 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013).

Plaintiff has not produced any evidence suggesting that the NYS Parole and NYPD defendants entered into an agreement, express or tacit, to deprive him of his constitutional rights. On that basis alone, the defendants[6] are entitled to summary judgment. <u>See</u> <u>Webb v. Goord</u>, 340

---

[6] Only the police-officer defendants moved for summary judgment as to this claim, but the Court concludes that *sua sponte* dismissal of the civil-conspiracy claims against the non-moving defendant parole officers is appropriate because the issues concerning them are the same as those against the police officers, and plaintiff had notice and full opportunity to make out his constitutional-conspiracy claim against the parole officers. <u>See</u> <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 26 (2d Cir. 1990).

F.3d 105, 110-11 (2d Cir. 2003). Plaintiff also has not alleged or produced facts to support the inference of communications to support the existence of an agreement or overt acts in furtherance of the alleged conspiracy, as he must to survive summary judgment. See Biswas, 973 F. Supp. 2d at 533.

## CONCLUSION

Defendants' motions for summary judgment are granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 27, 2018